IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

UNITED STATES OF AMERICA,

        Plaintiff,

vs.                         Case No. 09-40056-01-SAC

SAUL YANEZ-VASQUEZ,

        Defendant.

MEMORANDUM AND ORDER

Defendant is charged with one count of being an illegal alien in possession of a firearm, in violation of 18 U.S.C. § 922(g)(5) and 924(a)(2). This case comes before the court on the following motions filed by the defendant: motion to dismiss indictment (Dk. 34), motion for disclosure of 404(b) evidence (Dk. 36), motion for disclosure of experts (Dk. 38), and motion for disclosure of confidential informants (Dk. 39). The government has responded, opposing only the motion to dismiss.

In response to the discovery-type motions, the government states, respectively, that it does not intend to use any 404(b) evidence,[1] that it has already provided defendant with the requested information regarding the government's expert, that it does not intend to present any informant testimony at trial, and that it has provided and will continue to provide defense counsel with copies of co-conspirator plea agreements. The court shall bind the government to its representations and thus finds the three

---

[1]The court finds it unnecessary to rule at present on the government's assertion that the facts contained in the search warrant affidavit, which led to the defendant's arrest, is intrinsic to the only crime with which this defendant is charged.

motions for disclosure to be moot.

**Motion to dismiss indictment**

### Standard

"An indictment should be tested solely on the basis of the allegations made on its face, and such allegations are to be taken as true."*United States v. Todd*, 446 F.3d 1062, 1067 (10th Cir.2006) (quoting *United States v. Hall*, 20 F.3d 1084, 1087 (10th Cir.1994)). This court must therefore "avoid considering evidence outside the indictment when testing the indictment's legal sufficiency." *Hall*, 20 F.3d at 1087.

The relevant statute makes it unlawful for any illegal alien in the United States to possess, in or affecting commerce, any firearm.18 U.S.C. § 922(g)(5). That statute criminalizes the possession of firearms in or affecting commerce by convicted felons, fugitives from justice, unlawful users of controlled substances, persons adjudicated to be mentally defective, illegal aliens, aliens admitted under certain non-immigrant visas, persons dishonorably discharged from the Armed Forces, persons who have renounced their United States citizenship, persons subject to certain restraining orders, and persons convicted of misdemeanor crimes of domestic violence. *Id.*

Defendant's motion to dismiss the indictment asserts that he "has a constitutional right to possess a firearm, regardless of his alienage, therefore [18 U.S.C. § 922(g)(5)] both as applied to him and on its face, must be found unconstitutional." Dk. 34, p. 1.

Although defendant frames his argument in part as an as-applied challenge, defendant does not allege any facts which distinguish him from other illegal aliens, such that the statute might be constitutionally applied to them but not to him. Indeed, given

the court's restraint to examine solely the face of the complaint, an as applied challenge is not presently possible. *See United States v. Reed*, 114 F.3d 1067, 1070 (10th Cir.1997) (holding a pretrial vagueness challenge which does not implicate First Amendment values cannot be based on an undisputed pre-trial proffer of evidence, but must be based only on the facts presented at trial); *United States v. Boffil-Rivera*, 2008 U.S. Dist. LEXIS 84633, at *10-11 (S.D.Fla. Aug. 12, 2008) (finding a post *Heller* as-applied challenge to 18 U.S.C. § 922(g)(5) cannot be raised by a pretrial motion to dismiss). The court thus construes defendant's brief to raise solely a facial challenge to the statute, and assumes, without finding, that such a challenge is permissible.

To succeed in a facial challenge to a statute, it is necessary to establish " 'that no set of circumstances exists under which the Act would be valid,', *i.e.,* that the law is unconstitutional in all of its applications" or that the statute does not have "a plainly legitimate sweep." *Wash. State Grange v. Wash. State Republican Party*, 552 U.S. 442, 128 S.Ct. 1184, 1190, 170 L.Ed.2d 151 (2008) (internal quotation marks omitted). Defendant must also overcome the presumption that all Congressional enactments are constitutional. *See, e.g., Heller v. Doe*, 509 U.S. 312, 320, 113 S. Ct. 2637, 125 L. Ed. 2d 257 (1993).

**Second Amendment**

Defendant contends that in light of the recent decision by the United States Supreme Court in *District of Columbia v. Heller*, --- U.S. ----, 128 S.Ct. 2783 (2008), his indictment under 18 U.S.C. § 922(g)(5) violates his Second and Fifth Amendment rights. The Second Amendment provides: "A well regulated Militia, being necessary to the security of a free State, the right of the people to keep and bear Arms, shall not be

3

infringed." U.S. Const. amend. II. *Heller* held that the Second Amendment right to bear arms is not limited to the militia but provides an individual with a right to possess and use a firearm for lawful purposes, such as self-defense within the home. *See United States v. McCane*, 573 F.3d 1037, 1047 (10th Cir.2009) (rejecting argument that 922(g)'s interstate commerce requirement is unconstitutional in light of *Heller*). Defendant contends that because *Heller* held that the Second Amendment protects the individual right to possess firearms, this right must be extended to illegal aliens.

The court disagrees for two reasons. First, the defendant has not shown that as an illegal alien he has any Second Amendment rights, before or after *Heller*. Plaintiff has not shown that illegal aliens are among "the people" contemplated by the Second Amendment. As Justice Rehnquist stated in finding that an illegal alien lacked Fourth Amendment rights:

> "[T]he people" seems to have been a term of art employed in select parts of the Constitution . . . . [Its uses] sugges[t] that "the people" protected by the Fourth Amendment, and by the First and Second Amendments, and to whom rights and powers are reserved in the Ninth and Tenth Amendments, refers to a class of persons who are part of a national community or who have otherwise developed sufficient connection with this country to be considered part of that community.

*United States v. Verdugo-Urquidez,* 494 U.S. 259, 265 110 S.Ct. 1056 (1990).

*Heller* underscores that interpretation by recognizing the Second Amendment right as "the right of law-abiding, responsible *citizens* to use arms in defense of hearth and home." *Heller* at 2821 (emphasis added). "[T]his right was intended ... and was guaranteed to, and to be exercised and enjoyed by the *citizen*," *Id.* at 2806 (quoting *Andrews v. State*, 50 Tenn. 165, 183 (1871)(ellipsis in original; internal quotation marks omitted)). Defendant is not a citizen.

4

Consistent with that interpretation, the few cases which have examined the constitutionality of 922(g)(5) *post-Heller* have held that illegal aliens are not protected by the Second Amendment. *See United States v. Solis-Gonzalez*, 2008 WL 4539663, 1-3 (W.D.N.C.2008) (rejecting contention that the individual right to bear firearms conferred by *Heller* extends to illegal aliens); *United States v. Guerrero-Leco,* 2008 WL 4534226, 1 (W.D.N.C.2008) (same, noting *Heller* "did not find that all individuals present in America are protected by the Second Amendment. Rather, the Court described that protection as belonging to American citizens."); *United States v. Boffil-Rivera*, 2008 U.S. Dist. LEXIS 84633 (S.D. Fl. Aug. 12, 2008) (finding the Second Amendment individual right to bear arms defined by *Heller* does not apply to an illegal alien).

Defendant errs in presuming that illegal aliens are necessarily entitled to the full rights enjoyed by American citizens.

> ... an illegal alien cannot be lawfully employed in this country, and his employer is civilly and criminally liable for knowingly hiring or retaining him. An illegal alien is not generally entitled to federal or state public benefits, can be restricted from voting or running for office, is restricted from serving on a jury, and is not entitled to First Amendment rights. An illegal alien may not lawfully possess firearms, which arguably suggests that they are not part of "the people" whose rights to keep and bear arms is apparently protected in the Second Amendment. Finally, while the continuously present permanent resident alien is guaranteed due process when threatened with deportation, the illegal alien is only entitled to a "fair hearing upon threat of deportation."

*United States v. Esparza-Mendoza*, 265 F.Supp.2d 1254,1269-70 (D.Utah 2003) (finding previously deported illegal alien felons are not within "the people" covered by the Fourth Amendment.)

Secondly, assuming arguendo that the defendant may have a Second Amendment right, his argument that the statute violates that right is tacitly rebutted by

*Heller* itself. *Heller* noted that "[l]ike most rights, the right secured by the Second Amendment is not unlimited ... commentators and courts [have] routinely explained that the right was not a right to keep and carry any weapon whatsoever in any manner whatsoever and for whatever purpose." *Heller*, 128 S.Ct. at 2816. *Heller* apparently anticipated the very challenge currently made by defendant, and took care to foreclose it by stating:

> Although we do not undertake an exhaustive historical analysis today of the full scope of the Second Amendment, nothing in our opinion should be taken to cast doubt on longstanding prohibitions on the possession of firearms by felons and the mentally ill, or laws forbidding the carrying of firearms in sensitive places such as schools and government buildings.

*Id.* at 2816-17. The "longstanding prohibitions on the possession of firearms by felons and the mentally ill" are two of the nine prohibited categories in 922(g). Defendant makes much of the fact that Heller did not specifically mention the continuing validity of the prohibition on firearm possession by illegal aliens, although it mentioned felons. Nonetheless, the Court specifically alluded to the same statute defendant now challenges, and expressed its intention that such "presumptively lawful regulatory measures [act] only as examples; our list does not purport to be exhaustive." *Heller*, 128 S.Ct. at 2817 n. 26.

The Tenth Circuit subsequently held that *Heller's* language, above, includes a prohibited category not specifically mentioned by *Heller*, namely, persons convicted of misdemeanor crimes of domestic violence, § 922(g)(9).

> Notably, felons and the mentally ill are the first and fourth entries on the list of persons excluded from firearm possession by § 922(g), and in between come fugitives from justice and unlawful drug users. 18 U.S.C. § 922(g)(1)-(4). Nothing suggests that the *Heller* dictum, which we must follow, is not inclusive of § 922(g)(9) involving those convicted of misdemeanor domestic violence.

6

*In re U.S.*, 578 F.3d 1195, 1200 (10th Cir.2009). Accordingly, *Heller's* language is to be read broadly, as inclusive of all the prohibited categories in 922(g). This court thus reads the *Heller* dictum as including § 922(g)(5), the illegal alien category.

Defendant too lightly dismisses as dicta the statements by the United States Supreme Court in *Heller*, quoted above. Where, as here, the statement is not a mere opinion expressed in passing, but reflects the Court's reasoned consideration and explication of its governing rule of law, the judicial dicta has much persuasive authority and may carry great weight. *See County of Allegheny v. ACLU*, 492 U.S. 573, 668 (1989) (the "principle of stare decisis directs us to adhere not only to the holdings of … prior cases, but also to … explications of the governing rules of law."); *Cerro Metal Prods. v. Marshall*, 620 F.2d 964, 978 n.39 (3d Cir.1980) (distinguishing between obiter dictum and judicial dictum which may have "great weight.") In fact, the Tenth Circuit has already stated that this very language is *"Heller* dictum, which we must follow." *In re U.S.*, 578 F.3d at 1200. *See also United States v. Serawop*, 505 F.3d 1112, 1122 (10th Cir.2007) ("[W]e are bound by Supreme Court dicta almost as firmly as by the Court's outright holdings, particularly when the dicta is recent and not enfeebled by later statements." (quotation omitted)).

Additionally, post-*Heller*, the Tenth Circuit has consistently held that *Heller* does not undermine the constitutionality of other prohibited categories under 18 U.S.C. § 922(g). See *United States v. McCane*, 573 F.3d 1037, 1047 (10th Cir.2009) (rejecting argument that 922(g)(1) unconstitutionally violates the Second Amendment and the Commerce Clause as to felons); *United States v. Richard*, 2009 WL 3367632, 7 (10th Cir.2009) (rejecting argument that § 922(g)(3) violates the Second Amendment and the

Due Process clause as applied to drug users); *United States v. Gieswein*, 2009 WL 2837433 (10th Cir.2009) (rejecting Second Amendment and Commerce Clause challenges to § 922(g)(1)); *United States v. Nolan*, 2009 WL 2488159 (10th Cir.2009) (rejecting Second Amendment challenge to § 922(g)(1).) The Tenth Circuit in *Richard* summarily reached its decision in reliance on *Heller*, despite the fact that drug users were not specifically mentioned in *Heller's* dicta. The Tenth Circuit did so without examining whether the statutory prohibition on the possession of firearms by drug users was or was not "longstanding," defeating defendant's assertion in this case that a temporal analysis is necessary.[2]

To date, no court has embraced defendant's argument. *See U.S. v. Marzzarella*, 595 F.Supp.2d 596, 598-599 (W.D.Pa.2009) and cases cited therein. Instead, courts have consistently concluded that *Heller* "did not disturb or implicate the constitutionality of § 922(g), and was not intended to open the door to a raft of Second Amendment challenges to § 922(g) convictions." *United States v. White*, 2008 WL 3211298, at *1 (S.D.Ala. Aug. 6, 2008) (citing *United States v. Gilbert*, 2008 WL 2740453, at *2 (9th Cir. July 15, 2008)).

> Since *Heller* was decided, no court has found the firearm restrictions in 18 U.S.C. § 922 to be unconstitutional, even under an individual rights interpretation of the Second Amendment. Instead, courts have repeatedly affirmed the constitutionality of the statute's prohibition of firearm possession by felons, (citations omitted); persons convicted of domestic violence offenses; (citations omitted); and illegal aliens; *United States v. Boffil-Rivera*, No.08-20437 (S.D.Fla. Aug.12, 2008)).

---

[2] Defendant would be hard pressed to contend that restricting firearm possession to citizens is not longstanding. *Cf United States v. White*, __ F.3d __, 2010 WL 59127, 5 (11th Cir.2010) (holding § 922(g)(9), passed in 1996, is a presumptively lawful "longstanding prohibition[ ] on the possession of firearms.")

*United States v. Hendrix*, 2009 WL 3816970, 3 (W.D.Wis.2009). The court thus finds that the challenged statute survives Second Amendment scrutiny.

**Fifth Amendment**

Illegal aliens are protected by the equal protection clause of the Fourteenth Amendment, which is made applicable to the federal government through the due process clause of the Fifth Amendment. *Plyler v. Doe*, 457 U.S. 202, 211-212, 102 S.Ct. 2382, 2391-92, 72 L.Ed.2d 786 (1982).The equal protection clause, however, "... does not require things which are different in fact or opinion to be treated in law as though they were the same." *Skinner v. Oklahoma*, 316 U.S. 535, 540, 62 S.Ct. 1110, 1113, 86 L.Ed.2d 1655 (1942) (quoting *Tigner v. Texas*, 310 U.S. 141, 147, 60 S.Ct. 879, 882, 84 L.Ed.2d 1124 (1940)).

Illegal aliens and citizens are not similarly situated groups for equal protection purposes. "The fact that all persons, aliens and citizens alike, are protected by the Due Process Clause does not lead to further conclusion that all aliens are entitled to enjoy all the advantages of citizenship..." *Mathews v. Diaz*, 426 U.S. 67, 78, 96 S.Ct. 1883, 48 L.Ed.2d 478 (1976). "... a host of constitutional and statutory provisions rest on the premise that a legitimate distinction between citizens and aliens may justify attributes and benefits for one class not accorded to the other; . . . ." *Mathews*, 426 U.S. at 78. "The fact that an Act of Congress treats aliens differently from citizens does not in itself imply that such disparate treatment is "invidious." *Id.*, at 80.

**Standard**

The Court assumes, but does not decide, that intermediate scrutiny applies. *See Plyler; United States v. Skoien*, 587 F.3d 803, 812 (7th. Cir.2009). *Helle*r "declin[ed] to

establish a level of scrutiny for evaluating Second Amendment restrictions." *Heller,* 128 S.Ct. at 2821. Although *Heller* rejected the rational basis test, *Heller,* at 2817 n. 27, it necessarily examined only the rights of citizens. It is possible that the rational basis test, which has long been applied to aliens,[3] remains applicable. The court declines to apply strict scrutiny, since illegal aliens are not a suspect class, *Plyler*, 457 U.S. at 220; 221 n. 19, and *Heller* did not expressly find firearm possession to be a fundamental right. *See United States v. Miller*, 604 F.Supp.2d 1162, 2009 WL 499111, at *6 (W.D.Tenn. Feb.26, 2009); *United States v. Radencich*, No. 3:08-CR-00048(01)RM, 2009 WL 127648, at *4 (N.D.Ind. Jan.20, 2009); *United States v. Schultz*, 2009 WL 35225, at *5 (N.D.Ind.2009); *but see United States v. Engstrum*, 609 F.Supp.2d 1227, 1235 (D.Utah 2009) (applying strict scrutiny).

Intermediate scrutiny is satisfied if the restriction on possession of firearms by illegal aliens is substantially related to an important governmental objective. *See generally Clark v. Jeter*, 486 U.S. 456, 461(1988). The statutory classification must reflect "a reasoned judgment consistent with the ideal of equal protection by inquiring whether it may be fairly viewed as furthering a substantial interest of the state." *Plyler*, 457 U.S. at 217-18. This "require[s] the government goal to be substantial, and the cost to be carefully calculated." *Board of Trustees of State University of New York v. Fox,* 492 U.S 469, 480 (1989). The inquiry tests whether the regulation's "scope is in proportion to the interest served," *id.* (internal quotation marks omitted)

---

[3]"The reasonable or rational bases standard is the classification generally applicable for congressional action with regard to matters of alienage." *United States v. Phetchanphone*, 863 F.Supp. 1543, 1547 (D.Utah1994).

Defendant concedes that the Gun Control Act serves a compelling purpose. "The intent behind [922(g)] was to prevent future acts of violence by individuals deemed dangerous by Congress. (Citations omitted.)" *In re U.S.*, 578 F.3d at 1196. Maintaining public safety and preventing crime are compelling governmental interests. *See United States v. Salerno*, 481 U.S. 739, 750, 107 S.Ct. 2095, 95 L.Ed.2d 697 (1987) ("the Government's general interest in preventing crime is compelling"); *Schall v. Martin*, 467 U.S. 253, 264, 104 S.Ct. 2403, 81 L.Ed.2d 207 (1984) ("The legitimate and compelling state interest in protecting the community from crime cannot be doubted.");Cf *Schultz*, 2009 WL 35225, at * 5 ("Public safety is an important governmental objective .")

"The very structure of the Gun Control Act demonstrates that Congress ... sought broadly to keep firearms away from the persons Congress classified as potentially irresponsible and dangerous. These persons are comprehensively barred by the Act from acquiring firearms by any means." *Barrett v. United States,* 423 U.S. 212, 218, 96 S.Ct. 498, 46 L.Ed.2d 450 (1976).

> These provisions demonstrate that the objective of section 922(g) is to prohibit persons within specifically defined groups from possessing, receiving, or transporting firearms. Moreover, the specific types of groups selected for disqualification indicate that the purpose of the statute is that of keeping firearms out of the hands of those typically considered dangerous or irresponsible.

*United States v. Orellana*, 405 F.3d 360, 366 (5th Cir.2005). Section 922(g)(5)(A)'s predecessor statute, 1202(a)(5),[4] "was enacted in response to the wave of political and civil rights assassinations during the 1960s. (Citation omitted.)" *United States v. Toner*, 728 F.2d 115, 128 (2d Cir.1984). The "legislative history ... supports the view that

---

[4] 18 U.S.C.App. § 1202(a)(5) (1976), made it a felony for an illegal alien to receive, possess or transport "in commerce or affecting commerce ... any firearm."

11

Congress sought to rule broadly to keep guns out of the hands of those who have demonstrated that 'they may not be trusted to possess a firearm without becoming a threat to society.'" *Scarborough v. United States*, 431 U.S. 563, 573, 97 S.Ct. 1963, 52 L.Ed.2d 582 (1977) (quoting 114 Cong. Rec. 14,773 (1968) (quoting 114 Cong. Rec. 14,773 (1968) (remarks of Senator Long)).

Defendant contends the illegal aliens should not be included within the prohibited categories of gun possessors because there is no evidence that they are risky people. The court disagrees. By including illegal aliens within the ambit of Title VII's prohibitions, Congress evidenced its belief that such aliens, as a class, were within the untrustworthy persons whose possession of firearms would constitute a threat to society. *Orellana*, 405 F.3d at 368. *See United States v. Hayes*, --- U.S. ----, 129 S.Ct. 1079, 1087, 172 L.Ed.2d 816 (2009); *United States v. Rogers*, 371 F.3d 1225, 1229 (10th Cir.2004).

> Congress has made a policy judgment, as it has in numerous other statutes, that unlike citizens and legal residents, illegal aliens by their very unauthorized nature and lack of allegiance to the government of the United States pose a greater risk to abuse firearms. See Omnibus Crime Control and Safe Streets Act of 1968, Pub. L. No. 90-351, § 1201, 82 Stat. 197, 236 (1968) (Congressional findings for predecessor to section 922(g)).

*United States v. Boffil-Rivera*, 2008 Lexis 84633 (Aug. 12, 2008).

> Unlike most of the classifications that we have recognized as suspect, entry into this class, by virtue of entry into this country, is the product of voluntary action. Indeed, entry into the class is itself a crime. In addition, it could hardly be suggested that undocumented status is a "constitutional irrelevancy." With respect to the actions of the Federal Government, alienage classifications may be intimately related to the conduct of foreign policy, to the federal prerogative to control access to the United States, and to the plenary federal power to determine who has sufficiently manifested allegiance to become a citizen of the Nation.

*Plyler*, 457 U.S. at 221 n.19.

Congress has considerable power to exclude and regulate aliens, and its policies regarding aliens are largely immune from judicial inquiry.

> Disabilities such as these derive from Congress's undoubted authority to exclude aliens from this country... That power is considerable ... "[I]n the exercise of its broad power over naturalization and immigration, Congress regularly makes rules that would be unacceptable if applied to citizens." Congress may, indeed, "exclude [an alien] in the first instance for whatever reason it sees fit," because "an alien obviously brings with him no constitutional rights." The Court has cautioned that "any policy toward aliens is vitally and intricately interwoven with contemporaneous policies in regard to the conduct of foreign relations, the war power, and the maintenance of a republican form of government." Policies toward aliens "are so exclusively entrusted to the political branches of government as to be largely immune from judicial inquiry or interference." Finally, the Supreme Court has upheld state laws excluding aliens from certain categories of public employment, instructing:
> The exclusion of aliens from basic governmental processes is not a deficiency in the democratic system but a necessary consequence of the community's process of political self-definition. Self-government, whether direct or through representatives, begins by defining the scope of the community of the governed and thus of the governors as well: Aliens are by definition outside of this community.

*United States v. Esparza-Mendoza,* 265 F.Supp.2d 1254, 1270 (D.Utah 2003) (footnotes omitted), *affirmed*, 386 F.3d 953 (10th Cir. 2004).

The Tenth Circuit recently explained why illegal aliens are included in 922(g)'s group of persons prohibited from possessing firearms, stating:

> Illegal aliens are included in this group because they have "already violated a law of this country" and are "likely to maintain no permanent address in this country, elude detection through an assumed identity, and--already living outside the law--resort to illegal activities to maintain a livelihood." [*Orellana*] at 368 (quoting *United States v. Toner*, 728 F.2d 115, 128 (2d Cir.1984)).

*United States v. Ochoa-Colchado,* 521 F.3d 1292, 1297 (10th Cir.2008) (finding alien whose application was pending for adjustment of status was nonetheless "illegally or unlawfully in the United States" for purposes of § 922(g)(5)(A).) In so doing, the Tenth Circuit relied on the Second Circuit's rejection of an equal protection challenge to

13

section 922(g)(5)(A)'s predecessor statute. *Toner*, 728 F.2d at 128 (applying rational basis test). The Second Circuit in *Toner* reflects yet another rationale underlying the prohibition:

> ... "one seeking to arrange an assassination would be especially eager to hire someone who had little commitment to this nation's political institutions and who could disappear afterwards without a trace ...." CR82-00377 (E.D.N.Y. May 17, 1983) (order denying motion to dismiss Count Four of the indictment). See also, 114 Cong.Rec. 14774 (remarks of Senator Long).

*Toner*, 728 F.2d at 128 -129.

It matters not that some illegal aliens may be trustworthy but for their illegal entry, or would pose no actual threat to society if permitted to possess a firearm.

> No one would dispute that the statute strikes broadly-that was the expressed Congressional intention-and that not all illegal aliens (or ex-felons, for that matter) are disreputable, or unworthy of society's trust. *See Yiu Sing Chun v. Sava*, 708 F.2d 869 (2d Cir.1983). But that is not the issue, and we believe that the prohibition of the statute bears a rational basis to its justifiable goals.

*Toner,* 728 F.2d at 128 -129 (applying rational relationship test to 18 U.S.C.A. Appx. § 1202(a)(5)).

The court finds, based upon the authorities cited above, that if a facial challenge to the statute is indeed permissible, the prohibition of firearms' possession by illegal aliens substantially relates to the important governmental interests noted above, and thus does not violate any due process right. The restriction is no more extensive than its objective requires. Defendant's motion to dismiss shall therefore be denied.

IT IS THEREFORE ORDERED that defendant's motion to dismiss indictment (Dk. 34) is denied.

IT IS FURTHER ORDERED that defendant's motion for disclosure of 404(b) evidence (Dk. 36), defendant's motion for disclosure of experts (Dk. 38), and

defendant's motion for disclosure of confidential informants (Dk. 39) are denied as moot.

Dated this 28th day of January, 2010.

s/ Sam A. Crow
Sam A. Crow, U.S. District Senior Judge